# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | )   **Chapter 11** |
| **PLYMOUTH OIL** | ) |
| **COMPANY, L.L.C.,** | )   **Bankruptcy No. 12-01403** |
| | ) |
| **Debtor.** | ) |

## MEMORANDUM AND ORDER

Plymouth Energy, LLC filed a Motion under 11 U.S.C. § 1112(b) to convert this Chapter 11 case to Chapter 7. Creditor Prairie Sun Foods, LLC joined the motion and additionally moved for dismissal of the case. Creditor Iowa Prairie Bank, the Unsecured Creditors' Committee, and Debtor all objected to conversion. After carefully considering this case, the Court concludes it should be converted from a Chapter 11 case to a Chapter 7 case. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## I. BACKGROUND AND PARTIES' ARGUMENTS

Debtor Plymouth Oil, LLC ("Debtor") filed a Chapter 11 petition on July 23, 2012. At the time of filing, Debtor operated a corn oil extraction plant near Merrill, Iowa, adjacent to an ethanol refining plan known as Plymouth Energy, LLC ("Energy"). On May 9, 2013, Debtor filed a reorganization plan which proposed to change its business from corn germ and corn oil production to the development and manufacture of Golden Essence Flour—a product that had sold in *de minimis*

quantities. Numerous creditors filed objections to the Plan. The Court held a confirmation hearing and on October 28, 2013 denied confirmation of the Plan. The Court found that the Plan's success depended on the success of an entirely new business venture. The Court found that—although appealing—the ability of Golden Essence Flour to support the company (let alone sell in any meaningful quantities) was entirely speculative. As such, Debtor was without the factual support necessary to meet feasibility standards for a reorganization plan.

The Court then lifted the automatic stay so a group of creditors known as the "Bridge Lenders" could foreclosure on their mortgages. On January 6, 2014, Prairie Sun Foods, LLC ("Prairie Sun") acquired all of the Bridge Lenders' notes, mortgages, collateral documents, and claims. Prairie Sun then foreclosed on those claims in state court and received a judgment against Debtor. Debtor's plant was sold at a sheriff's sale on April 15, 2014. Prairie Sun purchased the plant at the sale.

Energy filed a Motion to convert the case from Chapter 11 to Chapter 7 under 11 U.S.C. § 1112(b)(A), (F), and (K). Energy argues that conversion to Chapter 7 is in the best interest of creditors and that cause exists to convert the case for three reasons: (1) because Debtor has substantial and continuing loss or diminution to the estate; (2) because Debtor is not filing monthly reports, or is filing those reports chronically late; and (3) because Debtor has unpaid quarterly Trustee fees.

Prairie Sun joined Energy's Motion to convert. In addition, Prairie Sun argued in the alternative that the Court should dismiss the case because there was nothing left of the company. Prairie Sun argued that because Debtor has no unencumbered assets, the Chapter 7 trustee would simply abandon the assets and there would be no substantive benefit to creditors. Prairie Sun argued that therefore, dismissal would result in a quicker resolution for creditors.

Iowa Prairie Bank (the "Bank") objected to the motion for conversion. The Bank argued that conversion would interrupt the pending § 363 sale of the "Mill Property"—their collateral—and result in the property selling for a lower price. The Bank did not make any other arguments against conversion.

The Unsecured Creditors Committee also objected to conversion. The Committee voted 2 to 1 against conversion and argued that the best chance for a recovery to unsecured creditors was in Chapter 11. The United States Trustee also filed a response, deferring to the Committee's opinion about what would be best for creditors. The United States Trustee did note however, that if Debtor stays in Chapter 11, it must comply with the reporting and fee requirements.

Debtor objects to the Motion to convert. Debtor argues that conversion would depress the § 363 sale value of the Mill Property. Debtor also argues that it will file the outstanding reports and pay any outstanding fees. Additionally, Debtor

argues that Chapter 11 is the best for creditors. Debtor asserts that the pending litigation between Debtor and Energy will bring approximately $1.9 million to the estate and allow Debtor to pay creditors. Debtor asserts that, if the case is converted, the Chapter 7 trustee will likely abandon the lawsuit, resulting in no recovery for many creditors. Debtor also asserts that conversion to Chapter 7 will result in even more fees. Energy responds that the litigation between the parties is ongoing and that the hope of prevailing is not enough to defeat cause for conversion.

The Court held a hearing on this Motion on April 15, 2014. After hearing the parties' arguments about the § 363 sale of the Mill Property, the Court deferred its ruling until after the sale. The § 363 sale was completed on June 13, 2014. The Court then delayed ruling so that the parties could discuss settlement. On July 17, 2014, the parties informed the Court that they would like the Court to rule on the Motion.

## II.   CONCLUSIONS OF LAW AND ANALYSIS

Energy brings its motion to convert under § 1112(b) of the Bankruptcy Code, which provides in relevant part:

> (b) (1)   Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, **absent unusual circumstances** specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, **the court shall convert a case under this**

**chapter to a case under chapter 7** or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, **if the movant establishes cause.**

11 U.S.C. § 1112(b)(1) (emphasis added).

"Under § 1112(b)(1), the movants have the initial burden to establish cause for conversion." In re Keeley & Grabanski Land P'ship, 460 B.R. 520, 535 (Bankr. D.N.D. 2011) (citing In re Miell, 419 B.R. 357, 366 (Bankr. N.D. Iowa 2009)). Energy has argued three of the grounds for "cause" under § 1112(b)(4), which include:

> (A) Substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (F) Unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>
> (K) Failure to pay any fees or charges required under chapter 123 of title 28;

11 U.S.C. § 1112(b)(4).

**A. Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation – § 1112(b)(4)(A)**

To establish "cause" under § 1112(b)(4)(A), movants "must establish both (1) a substantial and continuing loss of or diminution of the estate; and (2) absence of a reasonable likelihood of rehabilitation." Keeley & Grabanski Land P'ship, 460 B.R. at 539; 11 U.S.C. § 1112(b)(4)(A). The Court, after a careful and thorough

5

review, concludes that movants have established both a substantial and continuing diminution or loss to the estate and the absence of a reasonable likelihood of rehabilitation of Debtor.

### 1. Substantial and Continuing Loss of or Diminution of the Estate

The Court finds that there is substantial and continuing loss or diminution of Debtor's estate.  Debtor no longer has a plant or mill to do business and Debtor's monthly reports show no income.  Additionally, Debtor operating account has decreased to a mere $65 as of the February operating report.  Meanwhile, attorney's fees and bankruptcy fees continue to increase.  Simply put, Debtor has no income or hope of income from operations and liabilities continue to grow.  This shows a "substantial and continuing loss or diminution of the estate."  See In re ARS Analytical, LLC, 433 B.R. 848, 862 (Bankr. D.N.M. 2010) (holding continuing loss and diminution shown where projected future revenue zero and administrative expenses growing).  Therefore, movants have met their burden on this element.

### 2. Reasonable Likelihood of Rehabilitation of Debtor

The Court finds that Debtor does not have a reasonable likelihood of rehabilitation.  Debtor does not have a plant or mill to do business.  Debtor argues that the pending litigation between Debtor and Energy will produce $1.9 million,

allowing Debtor to pay creditors, and that therefore Debtor should remain in Chapter 11.

The Court disagrees. "Rehabilitation" is not the same thing as "reorganization." In In re Brutsche, the Bankruptcy Court for the District of New Mexico found that although the debtor's plan to sell its assets and pursue litigation to pay its creditors was a legitimate *reorganization* plan, it was not *rehabilitation*. In re Brutsche, 476 B.R. 298, 209 (Bankr. D.N.M. 2012). The court found that the debtor lacked a "profitable core around which to restructure a plan of reorganization." Id. The court also found that the debtor's reliance on a favorable outcome from pending litigation to cure its financial ills was "pure speculation." Id. In In re Original IFPC Shareholders, Inc., the Bankruptcy Court for the Northern District of Illinois stated the distinction this way:

> In a traditional chapter 11 case whether the debtor has a "reasonable likelihood of rehabilitation," would not turn on the anticipated future outcome of a single lawsuit, because cash flow from another valuable activity would provide the means for paying at least a portion of pre-petition debt from post-confirmation profits.

In re Original IFPC Shareholders, Inc., 317 B.R. 738, 742–43 (Bankr. N.D. Ill. 2004).

Although it is theoretically conceivable that Debtor could "rehabilitate" itself by winning the lawsuit against Energy, paying its creditors, and repurchasing the

plant and mill to restart business operations, this possibility is simply not concrete enough to establish a "reasonable likeliness of rehabilitation." Whatever the merits of the lawsuit, the Court finds that on these facts, a reasonable likelihood of rehabilitation cannot rest on potential litigation alone.

Other courts have applied a similar analysis. The Bankruptcy Court for the Eastern District of New York found that the prospect of a potentially meritorious lawsuit bringing funds into the estate was not enough to find that rehabilitation was possible. In re FRGR Managing Member, LLC, 419 B.R. 576, 583–84 (Bankr. S.D.N.Y. 2009) (providing an extensive analysis of whether pending litigation can provide a reasonable likelihood of rehabilitation); see also In re Corinthian, LLC, 440 B.R. 97, 102–03 (Bankr. E.D. Pa. 2009) (dismissing case with no current business operations and a successful outcome "wholly dependent" on successful litigation); Original IFPC Shareholders, Inc., 317 B.R. at 742–43 (reasonable likelihood of rehabilitation not established where no income, increasing administrative and attorney's fees, and entire plan premised on successful litigation); In re Orienta Co-op. Ass'n, 256 B.R. 508, 511–12 (Bankr. W.D. Okla. 2000) (converting a case to chapter 7 where ability to reorganize "solely dependent" on substantial recovery in litigation).

Movants have shown there is no reasonable likelihood of rehabilitation. The Court, therefore, concludes the movants have established cause under § 1112(b)(4)(A). Because the Court finds cause under § 1112(b)(4)(A), the Court will not assess whether cause exists under § 1112(b)(4)(F) or (K).

### B. Whether Debtor has Demonstrated "Unusual Circumstances"

When cause is established, the burden shifts to Debtor to show that the "unusual circumstances" exception applies. Keeley & Grabanski Land P'ship, 460 B.R. at 536 (citing In re Miell, 419 B.R. at 367). The exception in § 1112(b)(2) states:

> (2) **The court may not convert a case** under this chapter to a case under chapter 7 or dismiss a case under this chapter **if the court finds** and specifically identifies **unusual circumstances** establishing that converting or dismissing the case is not in the best interests of creditors and the estate, **and the debtor** or any other party in interest **establishes that**—
> (A) there is a **reasonable likelihood that a plan will be confirmed** within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; **and**
> (B) the **grounds for converting** or dismissing the case **include an act** or omission of the debtor **other than under paragraph (4)(A)**—
> (i) for which there exists a reasonable justification for the act or omission; and
> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2) (emphasis added). Debtor does not meet these requirements. There is no likelihood Debtor could get a plan confirmed in any reasonably foreseeable time period. Moreover, the Court found cause exists to

9

convert under § 1112(b)(4)(A). Therefore, Debtor cannot as a matter of law satisfy § 1112(b)(2)(B) because that exception does not apply.

### C. Whether Conversion or Dismissal of the Case is in the Best Interests of Creditors

Section 1112(b) states that the "court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b). The Court finds that converting the case is in the best interests of creditors. Conversion simply does not cut off the Chapter 7 trustee's ability to assess the pending litigation and pursue it if warranted. Therefore, the Court grants Energy's Motion to convert this case from Chapter 11 to Chapter 7.

**WHEREFORE**, Trustee's Motion to Convert this Chapter 11 Case to a Chapter 7 Case is **GRANTED**.

Dated and Entered:
August 1, 2014

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE